**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.   **CV 25-9951-JFW (PVCx)**                                     Date:  May 20, 2026

Title:      Claudia Sicairos -v- Cove Drinks, Inc.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
                None                                                                        None

**PROCEEDINGS (IN CHAMBERS):**          **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COVE DRINKS, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT  [filed 2/18/26; Docket No. 25]**

On February 18, 2026, Defendant Cove Drinks, Inc. ("Defendant") filed a Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion").  On March 30, 2026, Plaintiff Claudia Sicairos ("Plaintiff") filed her Opposition.  On April 6, 2026, Defendant filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's April 20, 2026 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

**A.      Plaintiff's Factual Allegations**

Defendant manufactures a line of probiotic sodas (the "Products") sold widely at retail stores throughout the country.  The Products' label represents that they contain "No Artificial Sweeteners."  Second Amended Class Action Complaint ("SAC"), ¶ 24.  Plaintiff purchased the Products on May 15, 2025, at a Target located in Inglewood, California, and on September 18, 2025, at a Target located in Culver City, California.  SAC, ¶ 20.  Plaintiff alleges that she relied on the "No Artificial Sweeteners" representation on the label in deciding to purchase the Products. SAC, ¶ 41.  According to Plaintiff this representation is false because the Products "all contain 10 grams of erythritol, the second most common ingredient in the Products after water.  The Products

Initials of Deputy Clerk __sr_

use erythritol as a sweetener."[1]  SAC, ¶ 25.  Although Plaintiff acknowledges that there is a natural form of erythritol found in fruits at low concentrations, Plaintiff alleges that the erythritol in commercially-sold food and beverages, such as the Products, is used in concentrations that are "1000-fold greater than levels found naturally in fruits," and "is a commercially manufactured artificial sweetener."  SAC, ¶¶ 27 and 34.  Specifically, Plaintiff alleges that the erythritol in commercially-sold food and beverages is the result of a multi-step manufacturing process that begins with fermenting a strain of genetically-modified substrates (such as GMO corn starch), and is purified through complex chemical processes employing chromatography resin, ion exchange resins, and activated charcoal.   SAC, ¶¶ 28-30. According to Plaintiff, because "commercial erythritol is manufactured through industrial fermentation and chemical processing – from processed corn/wheat starch, fermented with engineered microbes, and refined into a crystalline sweetener – it is classified as an artificial sweetener."  SAC, ¶ 32.  As a result, Plaintiff alleges that "[r]easonable consumers would not expect erythritol, a synthetic compound manufactured from an extensive chemical process, to be present in foods and beverages labeled 'No Artificial Sweeteners.'"  SAC, ¶ 33.  Plaintiff also alleges that she "would like to purchase the Products . . . in the future, but cannot currently do so because [she] cannot rely on the Products' labelling."  SAC, ¶ 66.

### B.    Procedural History

On October 17, 2026, Plaintiff filed a Class Action Complaint against Defendant.  On December 30, 2025, Plaintiff filed her First Amended Class Action Complaint.  On February 4, 2026, Plaintiff filed her SAC.  In her SAC, Plaintiff, on behalf of herself and a California class, alleges claims for: (1) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.; (2) unjust enrichment; (3) breach of express warranty; (4) violation of the "unfair" prong of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.; (5) violation of the UCL's "fraudulent" prong; (6) violation of the UCL's "unlawful" prong; and (7) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500. Sicairos seeks damages, restitution, and injunctive relief.

## II.    Legal Standard

### A.    Federal Rule of Civil Procedure 12(b)(1)

The party mounting a Rule 12(b)(1) challenge to the Court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration.  *See*

---

[1]  In her Opposition, Plaintiff states that "Cove makes a a lengthy argument to the effect that [Plaintiff] has not plausibly alleged any kind of implied 'healthfulness' representation that is deceptive.  Memo. 5-9.  But this argument is entirely beside the point: Plaintiff is not making an implied misrepresentation claim regarding the healthfulness of the drinks, much less bringing any kind of claim for unreasonable risk of personal injury.  Her allegations are simple: Cove Sodas' labels state that they contain 'No Artificial Sweeteners,' and that representation is false and misleading."  Opposition, 13:3-9.  As a result, any claims alleged in the SAC beyond Plaintiff's claim that the Products' labels represent that they contain "No Artificial Sweeteners" and that representation is false and misleading are **DISMISSED**.

Initials of Deputy Clerk  _sr_

*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual"). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In ruling on a Rule 12(b)(1) motion attacking the complaint on its face, the Court accepts the allegations of the complaint as true. *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiff['s] allegations." *White*, 227 F.3d at 1242 (internal citation omitted); *see also Thornhill Pub. Co., Inc. v. General Tel & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. . . '[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'") (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (9th Cir. 1977)). "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983). It is the plaintiff who bears the burden of demonstrating that the Court has subject matter jurisdiction to hear the action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

> **B.      Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

In addition, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id*. at 672. Further, "a pleader must identify the individual who made the alleged

Initials of Deputy Clerk __sr__

representation and the content of the alleged representation." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III.    Discussion

In its Motion, Defendant argues that Plaintiff's SAC should be dismissed. Specifically, Defendant argues that Plaintiff lacks Article III standing to pursue injunctive relief. Defendant also agues that Plaintiff's CLRA, UCL, FAL, breach of the express warranty, and unjust enrichment claims should be dismissed because Plaintiff has failed to state a claim that the label on Defendant's Product – which contains the phrases "Zero Sugar" and "No Artificial Sweetener" – is false or misleading. In addition, Defendant argues that Plaintiff's claims for equitable restitution fail because she has failed to allege that her legal remedies are inadequate. In her Opposition, Plaintiff argues that she has adequately alleged that consumers would be misled by Defendant's representation on the Products' label that the contain "No Artificial Sweeteners." Plaintiff also argues that she has standing to seek injunctive relief and that she has adequately alleged entitlement to equitable restitution.

### A.    Plaintiff Lacks Standing to Pursue Injunctive Relief

To pursue injunctive relief, a plaintiff must allege she faces a "real or immediate threat . . . that [she] will be again wronged in a similar way." *See Mayfield v. United States*, 599 F.3d 964,

Initials of Deputy Clerk _sr_

970 (9th Cir. 2010) (internal quotation and citation omitted).  In this case, Defendant argues that Plaintiff lacks standing under Article III to seek injunctive relief because Plaintiff is now aware of Defendant's purported "No Artificial Sweeteners" misrepresentation and is no longer at risk of future injury.  The Court agrees.  In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the plaintiff purchased wipes that were advertised as "flushable," but the plaintiff alleged that the "flushable" claim was false and misleading.  The Ninth Circuit recognized that, under certain circumstances, a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false," including when the consumer plausibly alleges that: (1) "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"; and (2) "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved."  *Id.*, at 969–70.  As a result, the Ninth Circuit held that the plaintiff in *Davidson* could allege standing for injunctive relief because when she encountered the wipes in the future, she would have no way of knowing whether the wipes had been improved – *i.e.*, whether the wipes were truly flushable – without purchasing and using them.  *Id.* at 972. However, since *Davidson,* courts have routinely dismissed claims for injunctive relief where a plaintiff can determine if the label is accurate before purchasing the product again.  *See, e.g., Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889, 911 (N.D. Cal. 2024) (distinguishing *Davidson*, and finding that "the Plaintiff need not purchase the product to confirm the meaning and veracity of the label"); *see also Jackson v. General Mills, Inc.*, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020) ("Jackson earlier relied on allegations that consumers do not bother to look at the weight marked on cereal boxes but instead base their evaluation of the amount of cereal on the box dimensions.  Given that she now knows she can ascertain the amount of cereal she is buying by looking at the label, she has not shown any likelihood she will be deceived in the future" and concluding that "[t]his case is unlike those cases involving product descriptions that cannot be verified merely by looking at the label," such as *Davidson*).  For example, in *Ringler v. J.M. Smucker Co.,* 783 F. Supp. 3d 1229, 1245-46 (C.D. Cal. 2025), the plaintiff alleged that the "natural" claim on Smucker's fruit spreads was false because the fruit spread contained citric acid that the plaintiff alleged was commercially produced using a black mold called Aspergillus niger. The court found that the plaintiff had failed to allege standing to seek injunctive relief because "by simply looking at the ingredients label, [the p]laintiff can uncover whether the [fruit spread] contains citric acid and avoid purchasing it."  *Id.*, at 1247-1248.  The court concluded that the plaintiff's ability to check the ingredient list on the fruit spread before purchasing it distinguished the case from *Davidson*, where the plaintiff "had no way of determining whether future representations would be true" before purchasing the product.  *Id*. at 1247.

In this case, Plaintiff alleges that, although she would like to purchase the Products in the future, "[s]he cannot rely on the Products' labelling."  SAC, ¶ 66.  However, Plaintiff does not dispute that erythritol is disclosed as an ingredient in the Products' ingredients list and Nutrition Facts Panel.  Instead, Plaintiff alleges that the erythritol contained in the Products is "artificial."  As a result, the Court concludes that Plaintiff lacks standing under Article III to seek injunctive relief because, unlike in *Davidson*, "there is nothing in the [SAC] to suggest [Plaintiff will be] unable to verify [Defendant's] representation [that the Products contain 'No Artificial Sweetener'] by checking the ingredient list."  *Loza v. Hershey Company*, 2024 WL 5453795 (N.D. Cal. Aug. 16, 2024) (granting motion to dismiss with respect to injunctive relief only); *see also Cimoli v. Alacer*, 546 F.Supp.3d 897, 906 (N.D. Cal. 2021) (finding, in light of *Davidson*, "a plaintiff lacks standing where

the plaintiff could easily discover whether a previous misrepresentation had been cured without first buying the product at issue") (internal quotation and citation omitted); *Stewart v. Kodiak Cakes, LLC*, 537 F.Supp.3d 1103, 1127 (S.D. Cal. 2021) (finding the plaintiffs lacked standing to pursue injunctive relief where they could "cross-check their previous disappointing purchases by examining the undisputed net weight").

Accordingly, Defendant's Motion is granted with respect to Plaintiff's lack of standing to seek injunctive relief.

### B.    The Other  Issues Raised in Defendant's Motion Are More Appropriately Resolved on a Motion for Summary Judgment

Defendant argues that Plaintiff has failed to state a claim with respect to her first claim for violation of the CLRA, second claim for unjust enrichment, third claim for breach of express warranty, fourth claim for violation of the "unfair" prong of the UCL, fifth claim for violation of the "fraudulent" prong of the UCL, sixth claim for violation of the "unlawful" prong of the UCL, and seventh claim for violation of the FAL.  Defendant also argues that Plaintiff has failed to state a claim for equitable restitution.  The Court concludes that these issues are more appropriately resolved on a motion for summary judgment.  As a result, Defendant's Motion is denied with respect to Plaintiff's failure to state a claim with respect to her first, second, third, fourth, fifth, sixth, and seventh claims and her claim for equitable restitution.

## IV.    Conclusion

For all the foregoing reasons, Defendant's Motion is **GRANTED in part** and **DENIED in part**.  Defendant's Motion is **GRANTED** with respect to Plaintiff's lack of standing to seek injunctive relief, and Plaintiff's request for injunctive relief is **DISMISSED without leave to amend and with prejudice**.  Defendant's Motion is **DENIED** with respect to Plaintiff's first, second, third, fourth, fifth, sixth, and seventh claims and her claim for equitable restitution.

IT IS SO ORDERED.